**Mike Dewayne MINCEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–01–537 CR.**

Court of Appeals of Texas, Beaumont.

Submitted July 22, 2003.

Decided July 30, 2003.

Christine Brown–Zeto, Orange, for appellant.

John D. Kimbrough, County Attorney, Troy Johnson, Asst. County Attorney, Orange, for state.

Before McKEITHEN, C.J., BURGESS, and DAVID B. GAULTNEY, JJ.

## OPINION

DAVID B. GAULTNEY, Justice.

A jury found Mike Dewayne Mincey guilty of aggravated sexual assault, habitual offender, and assessed a punishment of ninety-nine years in the Texas Department of Criminal Justice—Institutional Division. *See* TEX. PEN.CODE ANN. §§ 12.42(d), 22.021(a)(1)(A)(i),(2)(ii),(e) (Vernon 2003). He raises three issues on appeal.

### SUFFICIENCY OF THE EVIDENCE

Mincey argues the evidence is legally insufficient to support the conviction. In a legal sufficiency review, we consider all the record evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable in-

ferences therefrom, a rational jury could have found the accused guilty of all of the elements of aggravated sexual assault beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The elements of aggravated sexual assault applicable in this case are the following: A person (1) intentionally or knowingly, (2) causes the penetration of the female sexual organ of another person by any means, (3) without that person's consent, (4) by using acts or words placing the victim in fear that death will be imminently inflicted on any person. *See* TEX. PEN.CODE ANN. § 22.021 (Vernon 2003).

■ In the early morning hours of June 24, 1997, the victim, JLW, was home with her eight year old son, who was sleeping beside her. A male intruder broke into JLW's residence, entered the bedroom, and started beating her about the face. He threatened to kill her if she continued to resist. She was afraid for herself and her son. The attacker dragged her into the living room and sexually assaulted her. The victim was never able to identify her assailant. Because it was night and the room was dark, the victim could give only a general description of her attacker: white male, approximately 200 pounds, broad shoulders, short hair on top and sides and longer, curly hair in back.

After the attacker left, JLW called 9–1–1, and the police responded within minutes. One of the officers picked up her t-shirt and underwear, put them in a paper bag, and told her to give the bag to the sexual assault nurse at the hospital. JLW went to the hospital where a nurse performed a sexual assault examination. Blood samples, vaginal swabs, fingernail scrapings, oral swabs around the mouth, and hair samples were taken. Detective L.B. Cupit took the evidence from the

nurse directly to the Jefferson County Regional Crime Laboratory.

As part of the investigation, Detective Cupit conducted a house-to-house "canvass" and talked to Mincey, who, along with his brother, Jerry, lived at their mother's house in close proximity to the victim's home. During that conversation, Cupit noticed Mincey resembled the general description the victim gave of her attacker. Cupit left the Mincey residence but returned approximately an hour and a half later with Sergeant Moseley. When they arrived there, they saw Mincey on steps of the porch and told him they wanted to talk to him again. Immediately, Mincey retreated into the house and slammed the door. The officers repeatedly knocked on the door, shouted to Mincey that they wanted to talk with him again, and made cell phone calls to the residence. But Mincey did not answer. Sergeant Moseley then called Mincey's mother, Carolyn Smith Seger, at work and told her the police wanted to talk to Mincey about the sexual assault in the neighborhood. Seger, the owner of the house, came home, signed a "Permission to Search" form, unlocked the door to the house, and let the officers in. They found Mincey hiding behind boxes in the attic, arrested him for evading detention, took him to the police station, *Mirandized* him, and questioned him. Mincey voluntarily gave a statement: He said he had been smoking marijuana all day and drinking beer that night; although he did not think he went into the victim's house and raped her, he "guess[ed he] could have." Mincey also signed a written form consenting to the taking of a blood sample.

Mincey's blood samples, JLW's blood samples, the vaginal swabs, and cuttings from her clothing were sent to the Texas Department of Public Safety Crime Laboratory in Houston for DNA testing. The

State's expert, Edith Emerick, testified that the DNA profile of the semen sample on JLW's t-shirt is consistent with Mincey's DNA profile. She testified that the odds of the DNA on the t-shirt being from someone other than Mincey are 1 in 6.7 trillion Caucasians. The expert also testified that the odds of the sperm on the vaginal swabs being from someone other than Mincey is 1 in 42,590. Although Emerick acknowledged there was DNA from a third, unknown person on the swab, she indicated the third DNA could possibly have been from the victim's boyfriend.

Mincey argues the evidence was insufficient to convict him because the chain of custody on the victim's clothing was not maintained. The record reveals Detective Cupit placed the victim's t-shirt and underwear in a paper bag obtained from the police station and told her to carry it with her to the hospital and give it to the sexual assault nurse. Although the State's expert acknowledged this may not have been the proper way to handle the evidence, she stated the evidence was not contaminated by this evidence-handling method. The jury was free to weigh the credibility of the witnesses and the weight to be given their testimony. *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex.Crim.App.2002).

Considering the evidence in the light most favorable to the verdict, as an appellate court must in a legal sufficiency review, the evidence was legally sufficient for a rational jury to find beyond a reasonable doubt that Mincey sexually assaulted JLW. We overrule Mincey's legal sufficiency issue.

MOTION TO SUPPRESS

■ Mincey argues the trial court should have suppressed his statements and the physical evidence obtained by the police after his arrest, because there was no probable cause to arrest him; he further argues the detention was illegal. At the suppression hearing, the trial judge is the sole trier of fact and the exclusive judge of the witnesses' credibility and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000). The standard for reviewing a trial court's ruling on a motion to suppress is abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999). The evidence must be viewed in the light most favorable to the trial court's ruling. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App. 1999). We afford almost total deference to the trial court's determination of what the actual facts are, and then we review *de novo* whether those facts are sufficient to give rise to reasonable suspicion or probable cause. *See Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App.2001); *see also Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex.Crim.App.1997).

■ The reviewing court examines the reasonableness of a temporary detention in terms of the totality of the circumstances. *Balentine v.State*, 71 S.W.3d 763, 768 (Tex.Crim.App.2002). A temporary detention is justified if the detaining officer has specific articulable facts, which, taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Id.* When Detective Cupit returned to Mincey's residence to question Mincey, Cupit knew the following:

A. Mincey's residence was close to the victim's house.

B. Mincey fit the general description of the assailant.

C. Mincey had committed prior burglaries and had been in prison.

D. Mincey once said he was invisible at night and could do what he wanted.

Upon the officers' arrival at the residence, Detective Cupit told Mincey, who was standing outside on the steps of the house, that they wanted to talk to him further. Mincey went into the house, slammed the door, and refused to come to the door or answer the phone when they called him. Additional information was developed through the cell phone call to Mincey's mother at work. She told Sergeant Moseley she thought Mincey was the one who committed a recent convenience store robbery because she had seen him committing the robbery on a videotape aired on television; she also told the officer she thought Mincey had committed the sexual assault.

■ Mincey argues the officers had only a hunch, not reasonable suspicion, to detain him. We disagree. The totality of the circumstances, as detailed above, demonstrates the officers had reasonable suspicion to believe that Mincey had been involved in criminal activity. They were entitled to detain him for further investigation. Once he fled and hid from them, the officers had probable cause to arrest him for the offense of evading detention. *See* TEX. PEN.CODE ANN. § 38.04 (Vernon 2003); *see also Mottley v. State,* 841 S.W.2d 550 (Tex.App.-Houston [1st Dist.] 1992, no pet.). Probable cause for an arrest exists where police have reasonably trustworthy information sufficient to warrant a reasonable person to believe that a particular person has committed or is committing an offense. *McGee v. State,* 105 S.W.3d 609, 614 (Tex.Crim.App.2003). Here, the officers could reasonably conclude, based on their first hand observation of Mincey's conduct, that Mincey was intentionally evading detention. No arrest warrant was required, since this offense was committed in the officers' presence. *See* TEX.CODE CRIM. PROC. ANN. art. § 14.01(b) (Vernon 1977). It is of no consequence that Mincey was arrested for a different crime (evading detention) than the one for which he was

eventually charged (aggravated sexual assault). *Oles,* 993 S.W.2d at 106 (Tex.Crim. App.1999).

Under the totality of the circumstances, we conclude the trial judge did not abuse his discretion in denying the motion to suppress.

### INEFFECTIVE ASSISTANCE OF COUNSEL

■ Mincey argues his trial counsel was ineffective for failing to ask the court for authorization to hire an expert to assist in trial preparation and to testify at trial regarding the DNA evidence. To show ineffective assistance, Mincey must demonstrate that trial counsel's performance was deficient because it fell below an objective standard of reasonableness, and, but for counsel's errors, the result of the proceeding would have been different. *See Strickland v. Washington,* 466 U.S. 668, 688, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Rylander v. State,* 101 S.W.3d 107, 109–10 (Tex.Crim.App.2003). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

■ The record reveals that trial counsel filed a motion requesting the trial court to allow GeneScreen, a DNA testing lab, to conduct independent DNA testing of the State's evidence; the trial court granted the motion. Nothing in the record shows the results of any independent testing. If the independent testing was done, the results may have been the same as the State's DNA test results. Although appellate counsel filed a motion for new trial, no mention is made of ineffective assistance of trial counsel or the lack of a defense DNA expert. As the Court of Criminal Appeals once again pointed out in *Rylander,* "[T]he record on direct appeal will generally 'not be sufficient to show that counsel's repre-

sentation was so deficient as to meet the first part of the *Strickland* standard' as '[t]he reasonableness of counsel's choices often involves facts that do not appear in the appellate record.'" *Rylander,* 101 S.W.3d at 110 (quoting *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex.Crim.App.2002)). Here, the record does not reveal the motives behind trial counsel's actions after his motion was granted, and counsel's conduct may have been based on facts not in the record, such as the possibility of guilt-confirming results of DNA testing.

We further note that, in an attempt to raise reliability questions about the State's evidence, trial counsel vigorously questioned the State's DNA expert regarding the theory of cross-contamination of the State's evidence. Trial counsel took the State's DNA expert on voir dire and questioned her concerning the accuracy and reliability of the population statistics and the resulting conclusion that Mincey's DNA was consistent with the samples taken from the victim's t-shirt and vaginal swabs. Trial counsel also challenged the chain of custody of the State's evidence. Trial counsel's cross-examination of the State's DNA expert reveals he had informed himself about the scientific and legal issues relating to DNA testing and evidence. Appellant has failed to show that his trial counsel's performance fell below the objective standard of reasonableness under the first prong of *Strickland.* Issue two is overruled.

The conviction is affirmed.

AFFIRMED.