# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00136-CR

**Styron Earl Hale, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY
### NO. 090720, HONORABLE LINDA ANN RODRIGUEZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following the denial of his motion to suppress evidence, appellant Styron Earl Hale pleaded no contest to the offense of marihuana possession in an amount of two ounces or less. Punishment was assessed at 10 days in jail. In a single issue on appeal, Hale argues that the trial court should have granted his motion to suppress because the arresting officer did not have reasonable suspicion to detain him. We will affirm the trial court's judgment.

## BACKGROUND

The only witness at the suppression hearing was the arresting officer, Officer Scott Johnson of the San Marcos Police Department. Johnson testified that at approximately 12:57 p.m. on August 31, 2008, he received a dispatch to the area of a "small park" located on the corner of Third Street and Mill Street. The dispatch was based on an anonymous telephone call describing what Johnson characterized as a "male/female disturbance." Specifically, according to

Johnson, "the call came out as a male subject on a bicycle, and the couple was fighting or arguing near a Saturn vehicle." Johnson, who had 19 years' experience working for the San Marcos Police Department, testified that a "male/female disturbance" usually indicated "a domestic situation; like boyfriend/girlfriend, husband/wife." According to Johnson, "[R]outinely . . . it's a guarded situation; tensions are usually high. Oftentimes there has been violence or maybe continued violence, so it's an elevated priority call." Johnson added that "domestic violence situations are notoriously dangerous."

Johnson testified that he observed the following when he arrived at the location of the alleged disturbance: "And when I came around the corner—I was the only officer there—the first thing I saw was the Saturn vehicle, a subject near a bicycle, and the—they were in very close proximity like they were either presently arguing or had been arguing, and the female was rather disheveled and looked like she was wiping tears away." When the couple saw Johnson arrive, "the male subject, who was eventually identified as Mr. Hale, picked up his bike and began moving away from me despite my repeated verbal commands for him to stay put so that I could speak to him." When asked why he wanted Hale "to stay put," Johnson testified, "Well, I needed to investigate whether or not there had been a crime committed, in this case an assault."

Hale "continued to move away" from Johnson, despite repeated instructions for him to stop. Meanwhile, Johnson explained, "the female became very verbal and began walking over in my direction, which is another concern, because it's not terribly uncommon to have the tables turned and have the aggression directed at the officer; that has happened many times in the past." At the same time, Johnson testified, "a third subject," an unidentified male, began approaching

2

Johnson "from down the street." According to Johnson, this person's "emotions were clearly elevated, he was yelling something, which I couldn't understand. I didn't know who he was yelling at, but he was part of the situation and coming in our direction." Johnson continued,

> I told Mr. Hale again to stop. He said he didn't need to stop, he hadn't done anything wrong, there was no reason for him to talk to me. I pulled out my Taser and took it off safety and—which then produces a laser sight, put the sight on him and said, "Stop. Follow my commands or you will be tased." He said he didn't have to stop. He seemed as if momentarily he was going to comply, and then he thought about it for a second, and then I guess he decided he hadn't done anything and he didn't have to stay and talk to me. So he was tased.

After additional officers arrived on the scene and paramedics confirmed that Hale had not been seriously injured by the taser, Hale was placed under arrest for evading detention. He was then searched incident to arrest, and two small baggies of marihuana and a small drug scale were discovered on his person.

At the suppression hearing, Hale argued that Johnson's detention of him was based solely on an anonymous tip that was inadequately corroborated. For that reason, according to Hale, Johnson lacked reasonable suspicion to detain him. After taking the matter under advisement, the trial court disagreed, and denied the motion to suppress.

**STANDARD OF REVIEW**

A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). The trial court is given almost complete deference in its determination of historical facts, especially if those are based on an assessment of credibility and demeanor. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim.

App. 2008). The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006). However, for mixed questions of law and fact that do not fall within that category, a reviewing court conducts a de novo review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007).

The trial judge is the exclusive fact-finder at the suppression hearing. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When the trial court does not make express findings of fact, an appellate court must view the evidence in the light most favorable to the trial court's ruling, assuming that it made any implicit findings of fact that are supported by the record. *Id*. An appellate court will sustain the trial court's decision if it concludes that the decision is correct on any theory of law applicable to the case. *Id*. at 855-56.

**ANALYSIS**

A police officer may lawfully conduct a temporary detention if there is reasonable suspicion to believe that the detained person is violating the law. *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity. *Neal*, 256 S.W.3d at 280; *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). These facts must amount to more than a mere hunch or suspicion. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). "The articulable facts used by the

4

officer must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime." *Id*. In making this determination, we consider the totality of the circumstances. *Ford*, 158 S.W.3d at 492; *Garcia*, 43 S.W.3d at 530.

Reasonable suspicion may be established based on information given to police officers by citizen informants, provided the facts are adequately corroborated by the officer. *Brother v. State*, 166 S.W.3d 255, 258-59 (Tex. Crim. App. 2005). A tip by an unnamed informant of undisclosed reliability may justify the initiation of an investigation; standing alone, however, it rarely will establish the requisite level of reasonable suspicion necessary to justify an investigative detention. *Florida v. J.L.*, 529 U.S. 266, 269 (2000) (citing *Alabama v. White*, 496 U.S. 325, 329 (1990)). There must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *White*, 496 U.S. at 329. An officer's prior knowledge, his experience, and his corroboration of the details of the tip may be considered in establishing reasonable suspicion. *Id*. at 329-30. "Corroboration does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed." *Brother*, 166 S.W.3d at 259 n.5. "Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified." *Id*.

In contending that Officer Johnson lacked reasonable suspicion to detain him, Hale cites to three cases involving traffic stops based on tips to the police that this Court concluded

were not sufficiently corroborated by the detaining officer.  *See State v. Griffey*, 241 S.W.3d 700,

704 (Tex. App.—Austin 2007, pet. ref'd); *Stewart v. State*, 22 S.W.3d 646, 648 (Tex. App.—Austin

2000, pet. ref'd); *Davis v. State*, 989 S.W.2d 859, 865 (Tex. App.—Austin 1999, pet. ref'd).[1]  The

problem with comparing this case to those cases is the highly fact-specific nature of the reasonable-

suspicion inquiry.  As this Court has previously explained,

> In conducting our review, we must heed the Supreme Court's admonitions that "the
> concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully,
> reduced to a neat set of legal rules,'" and that assigning a precise definition
> to reasonable suspicion "is not possible."  Our inquiry into reasonable suspicion is
> "multi-faceted," and determinations made in other cases "'will seldom be a useful
> 'precedent' for another.'"  Instead, reasonable suspicion is a "commonsense,
> nontechnical conception[] that deal[s] with 'the factual and practical considerations
> of everyday life on which reasonable and prudent men, not legal technicians, act.'"
> The facts are judged under "an objective standard:  would the facts available to the
> officer at the moment of the seizure or the search 'warrant a man of reasonable
> caution in the belief' that the action taken was appropriate?"  Thus, we should avoid
> a formulaic approach or a piecemeal comparison of similar factors in other cases, and

---

[1]  All three of the cases cited by Hale are distinguishable from the facts of this case.  In *Davis v. State*, the police received a report that the driver of a vehicle was driving "recklessly" and that the occupants were "possibly smoking marihuana."  989 S.W.2d 859, 861 (Tex. App.—Austin 1999, pet. ref'd).  However, the detaining officer acknowledged in his testimony that "he observed no traffic offense being committed and saw no violation of law" prior to conducting his traffic stop.  *Id*.  In *Stewart v. State*, the police received a report that a person "fell down a couple times" while trying to get into his vehicle at a gas station and "appeared to be highly intoxicated."  22 S.W.3d 646, 648 (Tex. App.—Austin 2000, pet. ref'd).  However, the detaining officer testified that he conducted a traffic stop on the suspect's vehicle without having observed any traffic violations.  *Id*.  Finally, in *State v. Griffey*, the police received a report that a person was passed out behind the wheel of a vehicle in a restaurant's drive-through lane.  241 S.W.3d 700, 702 (Tex. App.—Austin 2007, pet. ref'd).  However, no criminal activity was alleged in the report and the detaining officer did not observe any criminal activity.  In fact, when he arrived at the scene, he observed the driver awake in her vehicle, which contradicted the tip.  *Id*. at 705.  In summary, in all three cases, the detaining officer observed nothing that could reasonably be characterized as suspicious behavior.  In contrast, as we explain below, Officer Johnson in this case observed several specific articulable facts, that, when considered in their totality, led him to reasonably suspect Hale of criminal activity.

instead consider the totality of the circumstances in this case and rely on commonsense inferences . . . .

*Tanner v. State*, 228 S.W.3d 852, 856-57 (Tex. App.—Austin 2007, no pet.) (internal citations omitted).

In this case, Officer Johnson received information from dispatch regarding a "male/female disturbance" at a "small park" located on the corner of Third Street and Mill Street. The caller specifically reported that the male was on a bicycle, and the couple was fighting or arguing near a Saturn vehicle. Hale devotes much of his brief to arguing that the tip was unreliable because it failed to provide a detailed description of the wrongdoing and because the tipster remained anonymous. *See Pipkin v. State*, 114 S.W.3d 649, 655 (Tex. App.—Fort Worth 2003, no pet.) (listing factors to be considered in determining reliability of tip). However, the caller did provide details, including the specific location of the disturbance, that it was between a male and a female, that the male was on a bicycle, and that the disturbance was occurring near a Saturn vehicle. As for the anonymity of the tipster, even completely anonymous tips may provide reasonable suspicion to justify a search or seizure, so long as the tip is sufficiently corroborated. *See, e.g.*, *White*, 496 U.S. at 331-32; *Mann v. State*, 525 S.W.2d 174, 175-76 (Tex. Crim. App. 1975); *George v. State*, 509 S.W.2d 347, 347-48 (Tex. Crim. App. 1974); *Ramirez v. State*, 658 S.W.2d 808, 810 (Tex. App.—Corpus Christi 1983), *aff'd*, 672 S.W.2d 480 (Tex. Crim. App. 1984). Here, Johnson was able to corroborate specific details of the tip when he arrived at the scene—a male and a female "were in very close proximity like they were either presently arguing or had been arguing," they were fighting or arguing close to a Saturn vehicle, and the male was near a bicycle. Moreover, Johnson

7

testified that "the female was rather disheveled and looked like she was wiping tears away." From these specific articulable facts, Johnson could have reasonably inferred that the female was physically and/or emotionally distraught, that Hale was responsible for the female's visible distress, and that Hale, because he was "in very close proximity" to the female, was either about to or threatening to come into physical contact with her. In fact, because of the female's "disheveled" appearance, Johnson could have reasonably inferred that Hale might have already done so. Such circumstances, Johnson could have reasonably concluded, suggested that a possible assault was in progress or had already been committed. *See* Tex. Penal Code Ann. § 22.01(a) (West Supp. 2010) (defining offense of assault).

Such a determination is particularly reasonable in light of Johnson's 19 years' police experience. Based on that experience, he testified that "male/female disturbances" usually indicated "domestic situations; like boyfriend/girlfriend, husband/wife." According to Johnson, "[R]outinely . . . it's a guarded situation; tensions are usually high. Oftentimes there has been violence or maybe continued violence, so it's an elevated priority call." He added that such situations were "notoriously dangerous." The trial court would not have abused its discretion in finding that Johnson's lengthy experience as a police officer made his suspicion that Hale may have committed an assault reasonable under the totality of the circumstances. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002) (recognizing, for purposes of reasonable suspicion analysis, that officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person").

8

Additionally, Johnson pointed to other specific articulable facts that gave him reason to suspect that Hale had or soon would be engaged in criminal activity. First, Johnson was confronted with what appeared to be a volatile situation. Johnson had already witnessed facts suggesting a possible assault, in public, of a female by a male. Johnson testified that as he was trying to stop and question the suspect, "the female became very verbal and began walking over in my direction." This concerned Johnson "because it's not terribly uncommon to have the tables turned and have the aggression directed at the officer; that has happened many times in the past." Meanwhile, Johnson testified, another male began approaching him "from down the street." According to Johnson, this person's "emotions were clearly elevated, he was yelling something, which I couldn't understand. I didn't know who he was yelling at, but he was part of the situation and coming in our direction." Thus, Johnson had two emotionally charged individuals coming toward him while Hale, who Johnson could have reasonably inferred was responsible for the others' elevated emotions, was refusing to cooperate. Thus, based on these additional facts, the trial court would not have abused its discretion in finding that Johnson had reason to suspect that Hale, if he had assaulted or threatened to assault the female in a public place, had also committed the offense of disorderly conduct. *See* Tex. Penal Code Ann. § 42.01(a)(4) (person commits offense if he "abuses or threatens a person in a public place in an obviously offensive manner"), (6) (person commits offense if he "fights with another in a public place") (West Supp. 2010).

Finally, Johnson testified that when he approached Hale, Hale "picked up his bike and began moving away from me despite my repeated verbal commands for him to stay put so that I could speak to him." Flight from a police officer, when combined with other suspicious

9

circumstances such as the ones discussed above, is often a decisive factor in support of a finding of reasonable suspicion. *See, e.g.*, *Washington v. State*, 660 S.W.2d 533, 535 (Tex. Crim. App. 1983) ("Flight from a law enforcement officer 'can provide in appropriate circumstances the key ingredient justifying the decision of a law enforcement officer to take action.'") (quoting *United States v. Vasquez*, 534 F.2d 1142, 1145 (5th Cir. 1976)); *Reyes v. State*, 899 S.W.2d 319, 324 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (characterizing flight as "the straw that broke the camel's back" in justifying officer's decision to detain appellant); *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (recognizing "nervous, evasive behavior" as "a pertinent factor in determining reasonable suspicion" and characterizing "headlong flight" as "the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such").

Hale contends that nothing Officer Johnson observed was necessarily criminal behavior. However, "[t]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain reasonable suspicion of criminal conduct." *Woods v. State*, 956 S.W.2d 33, 37 (Tex. Crim. App. 1997). Moreover, Hale addresses each of the facts on which Johnson relied in making his reasonable-suspicion determination in isolation from the other facts and circumstances of the case. Such a piecemeal approach to the evidence is not permissible in a reasonable-suspicion inquiry. *See Arvizu*, 534 U.S. at 273-74 (criticizing lower court's evaluation of each factor that gave rise to reasonable suspicion in isolation); *Loesch v. State*, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997) ("Because reasonable suspicion is determined by the totality of the circumstances, an appellate court must look at all of the facts together to make the reasonable suspicion determination; facts that do not show reasonable suspicion in isolation may do so when combined with other facts.");

*Sims v. State*, 98 S.W.3d 292, 296 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) ("[C]ourts should not engage in a 'divide and conquer' analysis of the facts, but should instead look at the totality of the circumstances to see if an officer had developed reasonable suspicion."); *see also Gurrola v. State*, 877 S.W.2d 300, 305 (Tex. Crim. App. 1994) (McCormick, P.J., dissenting) (dissenting because majority opinion "misapplie[d] the 'totality of the circumstances' test by individually examining in a vacuum each factor upon which [the officer] relied to temporarily detain appellant"; dissent concluded that totality of factors such as heated argument in parking lot and flight from officer, "when taken together," justified appellant's temporary detention). Considering the totality of the above circumstances, and construing Johnson's testimony and all reasonable inferences from that testimony in the light most favorable to the trial court's ruling, we cannot conclude that the trial court abused its discretion in finding that Johnson had reasonable suspicion to believe that Hale may have violated the law.

Because Johnson had reasonable suspicion to detain Hale, he similarly had probable cause to arrest Hale for the offense of evading detention. *See* Tex. Penal Code Ann. § 38.04 (West Supp. 2010) (providing that person commits offense of evading detention if he intentionally flees from peace officer attempting lawfully to detain him); *Covarrubia v. State*, 902 S.W.2d 549, 553-54 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (finding that officer had probable cause to arrest suspect for evading detention when facts and circumstances established that detention was lawful); *see also Mincey v. State*, 112 S.W.3d 748, 751-52 (Tex. App.—Beaumont 2003, no pet.) (finding that arrest for evading detention was lawful when officers had reasonable suspicion to detain suspect); *Mottley v. State*, 841 S.W.2d 550, 551 (Tex. App.—Houston [1st Dist.] 1992, no pet.)

11

(same).  Accordingly, the evidence found incident to the arrest was admissible, and we thus cannot conclude that the trial court abused its discretion in denying the motion to suppress.

We overrule Hale's sole issue.

## CONCLUSION

We affirm the judgment of the trial court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   December 15, 2010

Do Not Publish