# NO. 12-10-00017-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RODERICK CEBRON PIERSON,* *APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Roderick Cebron Pierson appeals his conviction for aggravated robbery. Appellant raises three issues regarding admission of certain evidence and the sufficiency of the evidence to support the verdict. We affirm.

## BACKGROUND

Two men robbed Chris Broers, the manager of the REO nightclub in Tyler, as he was walking to his truck after closing the nightclub in the early morning hours of October 3, 2008. The men threatened Broers and demanded his backpack. Broers resisted initially, and a melee ensued, during which he was beaten around the head and shot in the pelvis. Broers could not identify his assailants, but he later described one[1] of the men as wearing a dark, hooded sweatshirt and a blue bandana across his face.

At approximately the same time, John Latham was arranging to tow Appellant's Chevrolet Tahoe from a parking lot adjacent to the nightclub. Latham is a manager for Liberty Towing, and his company had a contract to tow unauthorized vehicles from parking lots surrounding the

---

[1] A second assailant was never apprehended.

nightclub. When Latham saw Appellant's Tahoe parked in the lot of Ernie's Plumbing, he immediately arranged for a tow truck to remove the vehicle. He testified that he had seen the vehicle being driven less than five minutes before he saw it parked. Latham testified that he heard what sounded like a muffled gunshot as he and the tow truck driver were making preparations to tow the Tahoe. Minutes later, Latham saw Appellant sprinting from the direction of the REO nightclub towards the Tahoe and the tow truck. Latham testified that once Appellant realized his Tahoe was going to be towed, he took off a dark, hooded sweatshirt and put it and a blue bandana into the vehicle. Latham watched as Appellant went behind the Tahoe and made a motion Latham later described as a throwing motion towards a grassy area.

Law enforcement officers and investigators arrived a short time after the shooting. During their questioning of Appellant, investigators discovered blood on his hand and a Winchester .38 Special Plus P bullet in his pocket. The investigators took a sample of the blood. Subsequent analysis revealed Broers's DNA in the blood sample.

Later, when Appellant's truck was searched, investigators found a box of the same Winchester .38 Special Plus P bullets. The investigators also found a spent bullet in the vicinity of where Broers had been shot. They did not find the gun the morning of the shooting. However, believing Appellant had thrown the gun into an overgrown area near where his truck had been parked, they returned three days later with four trusties from the Smith County jail to conduct a search for the gun. One of the trusties spotted the gun and alerted the investigators to its location. The trusties had been instructed not to touch or to venture near the gun if they spotted it. Detective James Riggle of the Smith County Sheriff's Department testified at trial that he took custody of the gun upon its discovery and that the unidentified trusty who saw it did not touch it. The gun was an RG .38 caliber pistol, and it was located in a grassy area less than twenty feet from where Appellant's Tahoe had been parked. The pistol contained five live bullets and one cartridge case that remained after a bullet had been fired. The bullets and cartridge case were Winchester .38 Special Plus P brand. A subsequent analysis revealed that the bullet found the morning of the shooting had been fired from the pistol found in the grassy area.

Deputy Lee Webb of the Smith County Sheriff's Department went to Mother Frances Hospital where Broers was being treated in the emergency room for a gunshot wound as well as other injuries sustained in the assault. Webb later testified that he received Broers's bloodied clothes from a hospital security officer, and he identified them when they were introduced at trial.

A Smith County grand jury indicted Appellant for the felony offense of aggravated robbery. He pleaded not guilty, and a trial was held. The jury found Appellant guilty of aggravated robbery as charged. The trial court assessed punishment at imprisonment for fifty years and a fine of ten thousand dollars. This appeal followed.

**ADMISSION OF EVIDENCE**

In his first issue, Appellant contends that the trial court improperly admitted the RG .38 caliber pistol into evidence because the State did not establish a chain of custody and because he did not have an opportunity to confront the unknown trusty who found the pistol. In his second issue, Appellant contends the trial court improperly admitted into evidence bloodied clothes recovered from the hospital where Broers was treated because the State did not establish a chain of custody and because he did not have the opportunity to confront the person who handed the clothes to the sheriff's deputy who sponsored the clothes at trial. Because of the similarity of these two issues, we will consider them together.

## Applicable Law

The admissibility of evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). Before physical evidence is admitted, it must be identified by "evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). This can be accomplished by testimony from a witness with knowledge that an item is what it is claimed to be. TEX. R. EVID. 901(b)(1); s*ee also Davis v. State*, 992 S.W.2d 8, 11 (Tex. App.–Houston [1st Dist.] 1996, no pet.). The chain of custody begins when the law enforcement officer takes possession of the evidence. *See Hartsfield v. State*, 200 S.W.3d 813, 818 (Tex. App.–Texarkana 2006, pet. ref'd). Proof of the beginning and end of a chain of custody will support the admission of the evidence in the absence of any evidence of tampering or alteration. *Dossett v. State*, 216 S.W.3d 7, 17 (Tex. App.–San Antonio 2006, pet. ref'd). Gaps or theoretical breaches in the chain of custody do not affect the admissibility of the evidence, absent affirmative evidence of tampering or comingling. *Id.* The state has no burden to disprove tampering or commingling; rather, the appellant has the burden to present affirmative evidence of tampering or commingling. *Id.*

The Confrontation Clause of the Sixth Amendment provides "in all criminal prosecutions,

the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. This procedural guarantee bars the admission of testimonial statements of a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross examine him. *See Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369, 158 L. Ed. 2d 177 (2004). The threshold question in determining whether the trial court erred in admitting the complained of evidence is whether the evidence is testimonial in nature. *See Woods v. State*, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004). Generally speaking, a statement is testimonial if it is a solemn declaration made for the purpose of establishing some fact. *Crawford*, 541 U.S. at 51, 124 S. Ct. at 1364.

**Analysis**

With regard to the pistol, Detective Riggle established a predicate sufficient for it to be admitted at trial. Unless there is evidence of tampering, "most questions concerning care and custody of a substance go to the weight attached [to], not the admissibility [of,] the evidence." *See Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997); *accord Caddell v. State*, 123 S.W.3d 722, 727 (Tex. App.–Houston [14th Dist.] 2003, pet. ref'd) ("Objections regarding theoretical or speculative breaches in the chain, without affirmative evidence of impropriety, go to the weight of the evidence rather than to its admissibility."). There is no evidence of tampering in this case. Therefore, the trial court did not abuse its discretion in concluding that the chain of custody began when Riggle retrieved the pistol from the ground from where it had been lying, and not when the unknown trusty had spotted it.

A closer question is presented with respect to whether the State's failure to call the trusty who found the gun violated Appellant's right to confront the witnesses against him. Under the State's version of events, the trusty did not touch the gun and merely served as a signaling indicator. This does not answer the question presented, however, because one of the purposes of the Confrontation Clause is to allow a defendant to challenge the state's version of events. On the other hand, the Confrontation Clause allows a defendant to confront witnesses who "bear testimony." *Crawford*, 541 U.S. at 51, 124 S. Ct. at 1364. Testimony is typically "a solemn declaration or affirmation for the purpose of establishing or proving some fact." *Id*. And the "principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused." *Id*. 541 U.S. at 50, 124 S. Ct. at 1354.

The State did not offer any testimony of the trusty taken in an ex parte examination, nor did it offer anything like that kind of statement. The State did offer the trusty's out of court statement to the officer that "[t]here's a gun here." Appellant did not object when that statement was offered. When Appellant did object later, he objected to the admission of the gun on the grounds that the chain of custody was not established and that he was denied the ability to cross examine the trusty. As we held previously, the trial court's chain of custody determination was reasonable. Furthermore, the trusty's statement that he found a gun had already been admitted without objection. Accordingly, because the evidence that the trusty found the gun had been previously admitted, any error in overruling Appellant's later objection would be harmless. *See Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991); *Shaw v. State*, 329 S.W.3d 645, 653 (Tex. App.–Houston [14th Dist.] 2010, pet. filed).

With regard to the bloodied clothes, the trial court's determination that Webb's testimony established the beginning of the chain of custody is not an abuse of discretion. The clothes were a very minor part of the trial. The jury saw pictures of Broers in the hospital, bloodied from the assault, and saw a blood stain on the seat of his truck from where he sat as he drove himself to the hospital. Broers was not asked if the clothes were his, and there is a gap between whoever took the clothes off of Broers and the person who handed them to Webb.

On the other hand, the pants were bloody and contained two holes that were consistent with the track of the bullet that injured Broers. Webb testified that he retrieved them from a security guard at the hospital. Reasonable minds could differ as to whether this established a sufficiently precise enough beginning point for the identification of the clothing. And the jury could have assigned a very low weight to the clothing evidence in light of the fact that the State did not formally show that it was Broers's clothing. However, in light of all of the circumstances, we hold that the trial court did not abuse its discretion when it determined that Webb could serve as the beginning point for the chain of custody.

With respect to Appellant's right to confront the individuals who retrieved the clothing from Broers and delivered them to Webb, Appellant did not object to the admission of the clothing on the basis of the Confrontation Clause, and so that part of his argument is not preserved for our review. *See* TEX. R. APP. P. 33.1; *Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000).

We overrule Appellant's first and second issues.

In his third issue, Appellant argues that the evidence is legally and factually insufficient to support the verdict of the jury. Specifically, Appellant contends that the exculpatory evidence outweighed the inculpatory evidence to such an extent that the jury's verdict was manifestly unjust.

## Standard of Review

Prior to 2010, Texas appellate courts reviewed both the legal and factual sufficiency of the evidence to support a verdict in a criminal case. Legal sufficiency review is defined by *Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61. L. Ed. 2d 560 (1979). Factual sufficiency review is defined by *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In October 2010, the court of criminal appeals held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual sufficiency standard" and overruled *Clewis* and its progeny. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality opinion). The court held that "the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *See id.* Accordingly, we will not independently consider Appellant's argument that the evidence is factually insufficient to support the verdict.

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U. S. at 315-16, 99 S. Ct. at 2786-87; *Brooks v. State*, 323 S.W.3d at 899. Under this standard, a reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *See Brooks*, 323 S.W.3d at 899; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the

State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

In this case, to support Appellant's conviction for aggravated robbery, the State's evidence had to show that Appellant used a deadly weapon and intentionally or knowingly threatened Broers in the course of robbing him with the intent to obtain and maintain control of his property. *See* TEX. PENAL CODE ANN. 29.03(a)(2) (Vernon 2003). Alternately, the trial court instructed the jury that it could find Appellant guilty if he acted with intent to promote or assist the commission of the offense and solicited, encouraged, directed, aided, or attempted to aid another person in the commission of the charged offense. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 2003).

**Analysis**

There is substantial evidence that supports the verdict. Witness John Latham saw Appellant sprinting from the scene of the shooting. Latham also saw Appellant make a throwing motion toward the spot where the gun that was used to shoot Broers was later found. The bullet used to shoot Broers, the bullets in the gun, the bullets in the truck, and the bullet in Appellant's pocket were all of the same manufacture.

Broers testified that one of his two assailants was wearing a dark, hooded sweatshirt and a blue bandana. Latham saw Appellant discarding articles of clothing into his Tahoe and both a dark, hooded sweatshirt and a blue bandana were later found in his Tahoe. Further, the blood found on Appellant's hand contained a mixture of Appellant's and Broers's DNA.

However, there is evidence contrary to the verdict. Specifically, the Department of Public Safety forensic expert testified that no gunshot residue–particulates that are sometimes found on the hand of a person who has recently fired a gun or handled a recently fired gun–was found on Appellant's hands. A forensic test of the pistol revealed the presence of DNA, but the DNA corresponded to an unidentified person and not Appellant. Finally, though it is unclear exactly how it would undercut the verdict, Appellant points out that the pistol was in an area that had not been secured and was not found until three days after the shooting.

After careful review of the evidence, we hold that the jury's resolution of the disputed factual issues is reasonable. The essence of Appellant's argument is that he was insufficiently identified as the shooter. However, the evidence is convincing that Appellant robbed Broers or that he acted in coordination with whoever robbed him. Broers's blood was on Appellant's hand, the bullets in his truck, the bullet in his pocket, and the bullet that was used to shoot Broers were all

of the same manufacture, Appellant was seen running from the area of the shooting, and he was seen throwing something in the vicinity of where the gun used to shoot Broers was ultimately found. When viewed in a light most favorable to the verdict, we hold that a rational jury could have concluded that the State proved each essential element of the offense beyond a reasonable doubt. We overrule Appellant's third issue.

## DISPOSITION

Having overruled Appellant's three issues, we *affirm* the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered March 31 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)