NO.
12-10-00017-CR

            

IN THE COURT OF
APPEALS 

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER,
TEXAS

RODERICK CEBRON PIERSON,                  §                 APPEAL
FROM THE 114TH

APPELLANT

 

V.                                                                         §                 JUDICIAL
DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE                                                        §                 SMITH
COUNTY, TEXAS

                                                        
                                         

MEMORANDUM OPINION

            Roderick
Cebron Pierson appeals his conviction for aggravated robbery.  Appellant raises
three issues regarding admission of certain evidence and the sufficiency of the
evidence to support the verdict.  We affirm.

 

Background

            Two
men robbed Chris Broers, the manager of the REO nightclub in Tyler, as he was
walking to his truck after closing the nightclub in the early morning hours of October
3, 2008.  The men threatened Broers and demanded his backpack.  Broers resisted
initially, and a melee ensued, during which he was beaten around the head and
shot in the pelvis.  Broers could not identify his assailants, but he later
described one[1]
of the men as wearing
a dark, hooded sweatshirt and a blue bandana across his face.  

At approximately the same time, John
Latham was arranging to tow Appellant’s Chevrolet Tahoe from a parking lot
adjacent to the nightclub.  Latham is a manager for Liberty Towing, and his
company had a contract to tow unauthorized vehicles from parking lots
surrounding the nightclub.  When Latham saw Appellant’s Tahoe parked in the lot
of Ernie’s Plumbing, he immediately arranged for a tow truck to remove the
vehicle.  He testified that he had seen the vehicle being driven less than five
minutes before he saw it parked.  Latham testified that he heard what sounded
like a muffled gunshot as he and the tow truck driver were making preparations
to tow the Tahoe.  Minutes later, Latham saw Appellant sprinting from the direction
of the REO nightclub towards the Tahoe and the tow truck.  Latham testified
that once Appellant realized his Tahoe was going to be towed, he took off a
dark, hooded sweatshirt and put it and a blue bandana into the vehicle.  Latham
watched as Appellant went behind the Tahoe and made a motion Latham later
described as a throwing motion towards a grassy area.  

            Law
enforcement officers and investigators arrived a short time after the
shooting.  During their questioning of Appellant, investigators discovered
blood on his hand and a Winchester .38 Special Plus P bullet in his pocket. 
The investigators took a sample of the blood.  Subsequent analysis revealed Broers’s
DNA in the blood sample.  

            Later,
when Appellant’s truck was searched, investigators found a box of the same
Winchester .38 Special Plus P bullets.  The investigators also found a spent
bullet in the vicinity of where Broers had been shot.  They did not find the
gun the morning of the shooting.  However, believing Appellant had thrown the
gun into an overgrown area near where his truck had been parked, they returned
three days later with four trusties from the Smith County jail to conduct a
search for the gun.  One of the trusties spotted the gun and alerted the
investigators to its location.  The trusties had been instructed not to touch
or to venture near the gun if they spotted it.  Detective James Riggle of the
Smith County Sheriff’s Department testified at trial that he took custody of
the gun upon its discovery and that the unidentified trusty who saw it did not
touch it.  The gun was an RG .38 caliber pistol, and it was located in a grassy
area less than twenty feet from where Appellant’s Tahoe had been parked.  The pistol
contained five live bullets and one cartridge case that remained after a bullet
had been fired.  The bullets and cartridge case were Winchester .38 Special Plus
P brand.  A subsequent analysis revealed that the bullet found the morning of
the shooting had been fired from the pistol found in the grassy area.  

            Deputy
Lee Webb of the Smith County Sheriff’s Department went to Mother Frances
Hospital where Broers was being treated in the emergency room for a gunshot
wound as well as other injuries sustained in the assault.  Webb later testified
that he received Broers’s bloodied clothes from a hospital security officer,
and he identified them when they were introduced at trial. 

A Smith County grand jury
indicted Appellant for the felony offense of aggravated robbery.  He pleaded
not guilty, and a trial was held.  The jury found Appellant guilty of
aggravated robbery as charged.  The trial court assessed punishment at imprisonment
for fifty years and a fine of ten thousand dollars.  This appeal followed.

 

Admission
of Evidence

            In
his first issue, Appellant contends that the trial court improperly admitted the
RG .38 caliber pistol into evidence because the State did not establish a chain
of custody and because he did not have an opportunity to confront the unknown
trusty who found the pistol.  In his second issue, Appellant contends the trial
court improperly admitted into evidence bloodied clothes recovered from the
hospital where Broers was treated because the State did not establish a chain
of custody and because he did not have the opportunity to confront the person
who handed the clothes to the sheriff’s deputy who sponsored the clothes at
trial.  Because of the similarity of these two issues, we will consider them
together.

Applicable Law

            The admissibility of
evidence is within the discretion of the trial court and will not be overturned
absent an abuse of discretion.  Moses v. State, 105 S.W.3d 622,
627 (Tex. Crim. App. 2003).  Before physical evidence is admitted, it must be
identified by “evidence sufficient to support a finding that the matter in
question is what its proponent claims.”  Tex.
R. Evid. 901(a).  This can be accomplished by testimony from a witness
with knowledge that an item is what it is claimed to be.  Tex. R. Evid. 901(b)(1); see also Davis
v. State, 992 S.W.2d 8, 11 (Tex. App.–Houston [1st Dist.] 1996, no pet.). 
The chain of custody begins when the law enforcement officer takes possession
of the evidence.  See Hartsfield v. State, 200 S.W.3d 813, 818
(Tex. App.–Texarkana 2006, pet. ref’d).  Proof of the beginning and end of a
chain of custody will support the admission of the evidence in the absence of
any evidence of tampering or alteration.  Dossett v. State, 216
S.W.3d 7, 17 (Tex. App.–San Antonio 2006, pet. ref’d).  Gaps or theoretical
breaches in the chain of custody do not affect the admissibility of the
evidence, absent affirmative evidence of tampering or comingling.  Id. 
The state has no burden to disprove tampering or commingling; rather, the
appellant has the burden to present affirmative evidence of tampering or commingling. 
Id.  

            The Confrontation
Clause of the Sixth Amendment provides “in all criminal prosecutions, the
accused shall enjoy the right . . . to be confronted with the witnesses against
him.”  U.S. Const. amend. VI. 
This procedural guarantee bars the admission of testimonial statements of a
witness who does not appear at trial unless the witness is unavailable and the
defendant had a prior opportunity to cross examine him.  See Crawford v.
Washington, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369, 158 L. Ed. 2d 177
(2004).  The threshold question in determining whether the trial court erred in
admitting the complained of evidence is whether the evidence is testimonial in
nature.  See Woods v. State, 152 S.W.3d 105, 113 (Tex. Crim. App.
2004).  Generally speaking, a statement is testimonial if it is a solemn
declaration made for the purpose of establishing some fact.  Crawford,
541 U.S. at 51, 124 S. Ct. at 1364.

Analysis

            With regard to the
pistol, Detective Riggle established a predicate sufficient for it to be
admitted at trial.  Unless there is evidence of tampering, “most questions
concerning care and custody of a substance go to the weight attached [to], not the
admissibility [of,] the evidence.”  See Lagrone v. State, 942
S.W.2d 602, 617 (Tex. Crim. App. 1997); accord Caddell v. State,
123 S.W.3d 722, 727 (Tex. App.–Houston [14th Dist.] 2003, pet. ref'd) (“Objections
regarding theoretical or speculative breaches in the chain, without affirmative
evidence of impropriety, go to the weight of the evidence rather than to its
admissibility.”).  There is no evidence of tampering in this case.  Therefore,
the trial court did not abuse its discretion in concluding that the chain of
custody began when Riggle retrieved the pistol from the ground from where it
had been lying, and not when the unknown trusty had spotted it.  

            A closer question is
presented with respect to whether the State’s failure to call the trusty who
found the gun violated Appellant’s right to confront the witnesses against
him.  Under the State’s version of events, the trusty did not touch the gun and
merely served as a signaling indicator.  This does not answer the question
presented, however, because one of the purposes of the Confrontation Clause is
to allow a defendant to challenge the state’s version of events.  On the other
hand, the Confrontation Clause allows a defendant to confront witnesses who
“bear testimony.”  Crawford, 541 U.S. at 51, 124 S. Ct. at 1364. 
Testimony is typically “a solemn declaration or affirmation for the purpose of
establishing or proving some fact.”  Id.  And the “principal evil
at which the Confrontation Clause was directed was the civil-law mode of
criminal procedure, and particularly its use of ex parte examinations as
evidence against the accused.” Id. 541 U.S. at 50, 124 S. Ct. at
1354. 

            The State did not
offer any testimony of the trusty taken in an ex parte examination, nor did it
offer anything like that kind of statement.  The State did offer the trusty’s out
of court statement to the officer that “[t]here’s a gun here.”  Appellant did
not object when that statement was offered.  When Appellant did object later, he
objected to the admission of the gun on the grounds that the chain of custody
was not established and that he was denied the ability to cross examine the
trusty.  As we held previously, the trial court’s chain of custody determination
was reasonable.  Furthermore, the trusty’s statement that he found a gun had
already been admitted without objection.  Accordingly, because the evidence
that the trusty found the gun had been previously admitted, any error in
overruling Appellant’s later objection would be harmless.  See Mayes
v. State, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991); Shaw v. State,
329 S.W.3d 645, 653 (Tex. App.–Houston [14th Dist.] 2010, pet. filed).

            With regard to the
bloodied clothes, the trial court’s determination that Webb’s testimony
established the beginning of the chain of custody is not an abuse of
discretion.  The clothes were a very minor part of the trial.  The jury saw
pictures of Broers in the hospital, bloodied from the assault, and saw a blood
stain on the seat of his truck from where he sat as he drove himself to the
hospital.  Broers was not asked if the clothes were his, and there is a gap
between whoever took the clothes off of Broers and the person who handed them
to Webb.  

On the
other hand, the pants were bloody and contained two holes that were consistent
with the track of the bullet that injured Broers.  Webb testified that he
retrieved them from a security guard at the hospital.  Reasonable minds could
differ as to whether this established a sufficiently precise enough beginning point
for the identification of the clothing.  And the jury could have assigned a
very low weight to the clothing evidence in light of the fact that the State
did not formally show that it was Broers’s clothing.  However, in light of all
of the circumstances, we hold that the trial court did not abuse its discretion
when it determined that Webb could serve as the beginning point for the chain
of custody.  

With
respect to Appellant’s right to confront the individuals who retrieved the
clothing from Broers and delivered them to Webb, Appellant did not object to
the admission of the clothing on the basis of the Confrontation Clause, and so
that part of his argument is not preserved for our review.  See Tex. R.
App. P. 33.1; Wright v. State,
28 S.W.3d 526, 536 (Tex. Crim. App. 2000).  

We
overrule Appellant’s first and second issues.  




Sufficiency of the Evidence

            In his third issue,
Appellant argues that the evidence is legally and factually insufficient to
support the verdict of the jury.  Specifically, Appellant contends that the
exculpatory evidence outweighed the inculpatory evidence to such an extent that
the jury’s verdict was manifestly unjust.

Standard of Review

            Prior to 2010, Texas
appellate courts reviewed both the legal and factual sufficiency of the
evidence to support a verdict in a criminal case.  Legal sufficiency review is
defined by Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct.
2781, 2786-87, 61. L. Ed. 2d 560 (1979).  Factual sufficiency review is defined
by Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). 
In October 2010, the court of criminal appeals held that there is “no
meaningful distinction between the Jackson v. Virginia legal sufficiency
standard and the Clewis factual sufficiency standard” and
overruled Clewis and its progeny.  See Brooks v. State,
323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality opinion).  The court held
that “the Jackson v. Virginia standard is the only standard that
a reviewing court should apply in determining whether the evidence is
sufficient to support each element of a criminal offense that the State is
required to prove beyond a reasonable doubt.”  See id. 
Accordingly, we will not independently consider Appellant’s argument that the
evidence is factually insufficient to support the verdict.

            When reviewing the
sufficiency of the evidence, we view all of the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  See
Jackson, 443 U. S. at 315-16, 99 S. Ct. at 2786-87; Brooks v.
State, 323 S.W.3d at 899.  Under this standard, a reviewing court does
not sit as a thirteenth juror and may not substitute its judgment for that of
the fact finder by reevaluating the weight and credibility of the evidence.  See
Brooks, 323 S.W.3d at 899; Dewberry v. State, 4 S.W.3d
735, 740 (Tex. Crim. App. 1999).  Instead, a reviewing court is to ensure that
the evidence presented actually supports a conclusion that the defendant
committed the crime.  See Williams v. State, 235 S.W.3d 742, 750
(Tex. Crim. App. 2007).

            The sufficiency of
the evidence is measured against the offense as defined by a hypothetically
correct jury charge.  See Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997).  Such a charge would include one that “accurately sets
out the law, is authorized by the indictment, does not unnecessarily increase
the State’s burden of proof or unnecessarily restrict the State’s theories of
liability, and adequately describes the particular offense for which the
defendant is tried.”  Id.

            In this case, to
support Appellant’s conviction for aggravated robbery, the State’s evidence had
to show that Appellant used a deadly weapon and intentionally or knowingly
threatened Broers in the course of robbing him with the intent to obtain and
maintain control of his property.  See Tex.
Penal Code Ann. 29.03(a)(2) (Vernon 2003).  Alternately, the trial court
instructed the jury that it could find Appellant guilty if he acted with intent
to promote or assist the commission of the offense and solicited, encouraged,
directed, aided, or attempted to aid another person in the commission of the
charged offense.  See Tex. Penal
Code Ann. § 7.02(a)(2) (Vernon 2003).   

Analysis

            There is substantial
evidence that supports the verdict.  Witness John Latham saw Appellant
sprinting from the scene of the shooting.  Latham also saw Appellant make a
throwing motion toward the spot where the gun that was used to shoot Broers was
later found.  The bullet used to shoot Broers, the bullets in the gun, the
bullets in the truck, and the bullet in Appellant’s pocket were all of the same
manufacture.  

            Broers testified that
one of his two assailants was wearing a dark, hooded sweatshirt and a blue
bandana.  Latham saw Appellant discarding articles of clothing into his Tahoe and
both a dark, hooded sweatshirt and a blue bandana were later found in his
Tahoe.  Further, the blood found on Appellant’s hand contained a mixture of Appellant’s
and Broers’s DNA.  

            However, there is
evidence contrary to the verdict.  Specifically, the Department of Public
Safety forensic expert testified that no gunshot residue–particulates that are
sometimes found on the hand of a person who has recently fired a gun or handled
a recently fired gun–was found on Appellant’s hands. A forensic test of the
pistol revealed the presence of DNA, but the DNA corresponded to an
unidentified person and not Appellant.  Finally, though it is unclear exactly how
it would undercut the verdict, Appellant points out that the pistol was in an
area that had not been secured and was not found until three days after the
shooting.    

            After careful review
of the evidence, we hold that the jury’s resolution of the disputed factual
issues is reasonable.  The essence of Appellant’s argument is that he was
insufficiently identified as the shooter.  However, the evidence is convincing
that Appellant robbed Broers or that he acted in coordination with whoever robbed
him.  Broers’s blood was on Appellant’s hand, the bullets in his truck, the
bullet in his pocket, and the bullet that was used to shoot Broers were all of
the same manufacture, Appellant was seen running from the area of the shooting,
and he was seen throwing something in the vicinity of where the gun used to
shoot Broers was ultimately found.  When viewed in a light most favorable to
the verdict, we hold that a rational jury could have concluded that the State
proved each essential element of the offense beyond a reasonable doubt.  We
overrule Appellant’s third issue.

 

Disposition

            Having overruled
Appellant’s three issues, we affirm the judgment of the trial
court.  

 

 

James T. Worthen

                                                                              
                Chief Justice

 

 

 

 

Opinion
delivered March 31 2011.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)


 
 
 
 
 
 
 
  
 
 
 
 
 
  
 












      [1] A second
assailant was never apprehended.