

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-11-00207-CR

_____

DANIEL FORD, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 100th District Court
Donley County, Texas
Trial Court No. 3500, Honorable Dan Mike Bird, Presiding

May 15, 2013

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant Daniel Ford appeals from the trial court's judgment adjudicating him guilty of burglary of a habitation, revoking his deferred adjudication community supervision, and sentencing him to twenty years of imprisonment in the Institutional Division of the Texas Department of Criminal Justice.  Appellant contends, through five points of error, the trial court committed reversible error. We will affirm.

Background

Appellant pleaded guilty to burglary of a habitation in October 2008.[1] The trial court placed appellant on deferred adjudication community supervision for a period of five years. His community supervision was subject to certain terms and conditions. Two months later, the State moved to adjudicate appellant's guilt based on the alleged commission of a new offense. Two years later, in December 2010, a visiting judge *sua sponte* ordered appellant to be examined regarding incompetency. After a psychologist, Dr. Philip J. Davis, submitted his evaluation report, appellant filed a motion and request for examination. The trial court granted it and a second psychologist, Dr. Timothy J. Nyberg, evaluated appellant.

The court conducted an incompetency trial[2] in May 2011, and found by a preponderance of the evidence appellant was legally competent to stand trial. The court then heard the State's motion to adjudicate. Appellant pleaded "not true" to the allegation in the State's motion to adjudicate. After hearing evidence, the trial court found appellant violated the terms of his community supervision by committing in Oklahoma the offense of unauthorized use of a motor vehicle, adjudicated appellant guilty, and revoked appellant's deferred adjudication community supervision. Punishment was assessed at twenty years of imprisonment. This appeal followed.

---

[1] Tex. Penal Code Ann. § 30.02 (West 2012).

[2] Tex. Code Crim. Proc. Ann. art. 46B.005 (West 2005).

Analysis

Through five issues, appellant contends there was no evidence, or insufficient evidence, to show by a preponderance of the evidence he was competent to be tried on the State's motion to adjudicate or that he violated the terms of his deferred adjudication community supervision.

Standard of Review

On violation of a condition of community supervision imposed under an order of deferred adjudication, the defendant is entitled to a hearing limited to the determination by the court of whether it proceeds with an adjudication of guilt on the original charge. Tex. Code Crim. Proc. Ann. art. 42.12, § 5 (West 2012). This determination is reviewable in the same manner used to determine whether sufficient evidence supported the trial court's decision to revoke community supervision. *Id.; Antwine v. State*, 268 S.W.3d 634, 636 (Tex.App.—Eastland 2008, pet. ref'd). In an adjudication hearing, the State must prove by a preponderance of the evidence that a defendant violated the terms of his community supervision. *Rickels v. State,* 202 S.W.3d 759, 763-64 (Tex.Crim.App. 2006); *Antwine,* 268 S.W.3d at 636. A preponderance of the evidence means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *Rickels,* 202 S.W.3d at 763-64.

Given the unique nature of a revocation hearing and the trial court's broad discretion in the proceedings, the general standards for reviewing sufficiency of the evidence do not apply. *Pierce v. State,* 113 S.W.3d 431, 436 (Tex.App.—Texarkana

2003, pet. ref'd). Instead, we review the trial court's decision regarding community supervision revocation for an abuse of discretion and examine the evidence in a light most favorable to the trial court's order. *Garrett v. State,* 619 S.W.2d 172, 174 (Tex.Crim.App. 1981). When the standard of review is abuse of discretion, the record must simply contain some evidence to support the trial court's decision. *Herald v. State,* 67 S.W.3d 292, 293 (Tex.App.—Amarillo 2001, no pet.). The trial judge is the trier of fact and the arbiter of the credibility of the testimony during a hearing on a motion to adjudicate. *Garrett,* 619 S.W.2d at 174.

Competency to Stand Trial

In his first issue, appellant argues the trial court erred in adjudicating him guilty and sentencing him to imprisonment because he was not competent at the time of the proceedings. Appellant relies primarily on a statement in the written report of the first psychologist to examine him. Dr. Davis, as part of his findings, reported he was "not able to determine whether Mr. Ford meets the criteria to be considered competent to stand trial."

A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence. Tex. Code Crim. Proc. Ann. art. 46B.003(b) (West 2006). A person is incompetent to stand trial if he does not have (1) sufficient present ability to consult with his attorney with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against him. Tex. Code Crim. Proc. Ann. art. 46B.003(a) (West 2006). The same standard applies to a revocation hearing. *See*

4

*McDaniel v. State*, 98 S.W.3d 704, 710 (Tex.Crim.App. 2003); *Rice v. State*, 991 S.W.2d 953, 958 (Tex.App.—Fort Worth 1999, pet. ref'd) (each applying standard to revocation hearing).

Dr. Davis testified at the incompetency trial. His report also was introduced into evidence. The report states that at times during his examination of appellant, which took place at the Donley County Jail, appellant "provided demographic and history information which is highly improbable."[3] As examples, the report states appellant told Davis his actual name was "DeAngello Calhonne Romannei," that he had attended "law school, college, med school and art school," and had worked as "a pediatrician from 1975 until 1985, then I retired."[4] Based on their conversation, Davis found the improbable information "appear[s] to be grandiose delusions, possible symptoms of serious mental illness. Feigning these symptoms cannot be ruled out." The report states Davis's "clinical opinion that [appellant] is feigning symptoms of mental illness (grandiose delusions) in order to delay prosecution." Because he did not have with him the tools necessary for a more thorough psychological examination, Davis testified, he was not able to rule out the possibility appellant was suffering from a mental illness characterized by such bizarre and grandiose delusions.

Both in his written report and during testimony, Davis said appellant's responses to his questions dealing with his criminal charges and upcoming court proceedings were appropriate and correct. In fact, the written report notes that appellant's responses to

---

[3] Emphasis in the report.

[4] The report states appellant's age as 25 years.

"competency questions" were "in stark contrast to his presentation of delusional material . . . ." Davis testified that "[i]n terms of [appellant's] competency, I did not have any question about his ability to meet the criteria to be considered competent . . . ." Davis gave the court his opinions appellant understood the criminal proceeding concerning the motion to adjudicate, had the ability to consult with his attorney with a reasonable degree of rational understanding, had a rational as well as factual understanding of the proceedings against him, had an understanding of the charges and consequences of those charges, and was able to discuss his case with his attorney and assist him.[5]

Dr. Nyberg also testified, opining appellant "did not meet the statutory requirements for incompetency and would most likely be found to be competent to stand trial by the judicial trier of fact." Nyberg's report was also introduced into evidence. In that report, Nyberg noted appellant, when not directly addressing relevant legal matters, "made statements that were laden with bizarre content." Similar to Davis's report, however, Nyberg's report states that "some of [appellant's] more unusual statements may have been equally likely to arise from either mental illness or from intentional attempts to be uncooperative."

Both testifying psychologists gave the court opinions appellant was competent to stand trial, and described their reasons for concluding so. Under the applicable standard, we see no error in the trial court's determination. We resolve appellant's first issue against him.

---

[5] *See* Tex. Code Crim. Proc. Ann. Art. 46B.024(1)(A) (setting forth factors for competency determinations, including those mentioned by Dr. Davis).

Oklahoma Offense

In appellant's remaining three issues, he complains of the trial court's admission of evidence of the offense the State alleged he committed in Oklahoma. In particular, he challenges the admission of State's Exhibit 3, the Oklahoma pen packet,[6] and State's Exhibit 4, the charging instrument for the Oklahoma offense.

We review a trial court's decision on the admissibility of evidence for an abuse of discretion. *Torres v. State,* 71 S.W.3d 758, 760 (Tex.Crim.App. 2002); *Salazar v. State,* 38 S.W.3d 141, 153-54 (Tex.Crim.App. 2001). A trial court abuses its discretion when its decision falls "outside the zone of reasonable disagreement." *Torres,* 71 S.W.3d at 760; *Salazar,* 38 S.W.3d at 153-54. The test for an abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) (op. on reh'g).

The State may prove the existence of a criminal conviction by offering certified copies of the judgment and sentence, along with independent evidence showing the defendant is the same person named in the conviction. *Beck v. State,* 719 S.W.2d 205, 209-10 (Tex.Crim.App. 1986). No specific document or mode of proof is required. *Flowers,* 220 S.W.3d at 921. A pen packet is admissible to show a defendant's prior crimes provided it is properly authenticated. *Reed v. State,* 811 S.W.2d 582, 586 (Tex.Crim.App. 1991).

---

[6] A "pen packet" is the document compiled by a prison official based on other primary documentation received from the clerk of the convicting court. *Flowers v. State*, 220 S.W.3d 919, 923, n.14 (Tex.Crim.App. 2007); *Cuddy v. State*, 107 S.W.3d 92, 96 (Tex.App.—Texarkana 2003, no pet.).

Rule of Evidence 902(1) provides that extrinsic evidence of authenticity as a condition precedent to admissibility is not required for documents bearing a seal purporting to be that of another state, and a signature purporting to be an attestation or execution. Tex. R. Evid. 902(1). Here, the pen packet included a cover page bearing what appears to be the seal of the State of Oklahoma, and a signature purporting to be that of the Manager of the Offender Records Unit of the Oklahoma Department of Corrections. We conclude the State is correct the pen packet meets the requirements for admissibility under Rule 902(1). *Reed,* 811 S.W.2d at 586.

We also overrule appellant's contentions with regard to the admission of State's Exhibit 4, which appears to be a faxed copy of a certified copy of the information charging appellant with the commission of the Oklahoma offense. Rule 902 also provides for the self-authentication of certified copies of public records. Tex. R. Evid**.** 902(4). A copy of an official record or report or compilation of information setting out the specifics of a criminal conviction that is certified as correct by the county or district clerk of the court in which the conviction was obtained is admissible under Rule 902. *Flowers,* 220 S.W.3d at 922-23; *see also* Tex. R. Evid. 901(b)(7) (public record admissible if authenticated by evidence that the writing is "from the public office where items of this nature are kept"); *Langston v. State,* 776 S.W.2d 586, 587-88 (Tex.Crim.App. 1989). Exhibit 4 is a copy of the charging instrument from Comanche County, Oklahoma, bearing facsimile information, as well as a seal and certification by the District Court Clerk of that county as a true copy of a record maintained by that clerk. That it is a faxed copy rather than the "original" certified copy of the charging instrument does not deny it admissibility under Rule 902(4). *See Englund v. State,* 946

S.W.2d 64, 71 (Tex.Crim.App. 1997) (finding copy admissible where document included facsimile information on the document, showed it was transmitted from the clerk of the court, the same source of the certified copy, included the seal of the court, and contained a statement that it was a true and correct copy of the original). It was admissible under Rule 902(4).  Tex. R. Evid. 902(4).

Appellant also raises an argument regarding the testimony of the State's witness, Holcomb, identifying appellant as the same person who committed the offense in Oklahoma.   Relying on *Hartsfield v. State,* 200 S.W.3d 813, 817-18 (Tex.App.— Texarkana 2006, pet. ref'd), appellant contends the State's witness lacked the requisite personal knowledge because she gathered his social security number and birth date from a "personal data sheet" that she did not compile and of which she had no other personal knowledge.

We do not find support in *Hartsfield* for appellant's argument.   That case addressed authentication and identification of evidence, as well as chain of custody issues. *Hartsfield,* 200 S.W.3d at 817-18.  Here, Holcomb testified she was an assistant director and community supervision officer with a department of the 100th Judicial District.  Holcomb testified the Oklahoma judgment and sentence included the name "Daniel Lee Ford," and a social security number and birth date matching those for appellant contained in a "personal data sheet," maintained in her office.  She testified she "ran his criminal history" to confirm the information from the personal data sheet and reviewed the offense reports to ensure all referred to the same person, appellant.  Holcomb also agreed she was in the courtroom when appellant pleaded guilty to the

9

offense in the 100th Judicial District and provided community supervision to him for a brief period.

To link appellant with the Oklahoma offense, the trial court was not limited to evidence provided by Holcomb's testimony. The Oklahoma pen packet contained a photograph, permitting the trial court to compare the visage depicted with appellant's in open court. It also contained an arrest record, also bearing a photograph, reflecting appellant's arrest in April 2009 in Donley County, Texas.

We see no abuse of discretion in the trial court's admission of the Oklahoma records, or in the trial court's conclusion appellant violated a condition of his community supervision by committing a violation of Oklahoma law. We resolve appellant's second issue against him.

Conclusion

Having resolved each of appellant's issues against him, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.