In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00271-CR
______________________________


DARNELL HARTSFIELD, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 4th Judicial District Court
Rusk County, Texas
Trial Court No. CR04-363


                                                 



Before Morriss, C.J., Carter and Cornelius,* JJ.
Opinion by Justice Carter


________________________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

O P I N I O N

            Darnell Hartsfield was convicted of aggravated perjury and, after pleading true to six felony
enhancement allegations, the trial court sentenced him to life imprisonment. We affirm the judgment
of the trial court.
Background Facts
            On September 23, 1983, five people were abducted from a Kentucky Fried Chicken (KFC)
restaurant in Kilgore, Texas.


 Hours later, their bodies were found on an oil lease in Rusk County. 
On learning of the abduction, police officers, including Elliott and Captain Marvin Avance, went to
KFC and found the restaurant in disarray, with blood spattered in various places. While the officers
were investigating, the bodies of the individuals were found. Most of the officers went to the other
crime scene, leaving Captain Avance in charge at the KFC until Tyler police officers arrived hours
later to process the scene. Unfortunately, these investigative measures did not solve the case.
            About twenty years later, in June 2001, DNA testing was done on a blood sample taken from
a box from KFC. The sample was statistically matched to Hartsfield who, as an inmate in the Texas
Department of Criminal Justice,


 had a DNA sample in the Texas CODIS.


 On September 22, 2003,
Hartsfield appeared as a subpoenaed witness before a grand jury in Rusk County and repeatedly
denied that he had been present in KFC September 23, 1983. On November 9, 2004, a grand jury
indicted Hartsfield for aggravated perjury. 
            On the same day as the indictment, Kyle Freeman, the elected County Attorney at that time,
signed and filed a deputation, conferring his duties with regard to Hartsfield's case to Lisa Tanner,
an Assistant Attorney General. Tanner executed and filed the proper oath of office. On January 1,
2005, in the interim between the indictment and the trial, Michael Jimerson succeeded Freeman as
County Attorney. Jimerson told Tanner to keep doing what she was doing in regard to the Hartsfield
case. Even though Jimerson was present during the Hartsfield trial, Tanner presented the State's case
to the jury and the trial court.
Issues Presented
1.         Was Tanner properly authorized by the duly elected County Attorney to prosecute this case? 
2.         Did the trial court err in admitting State's Exhibits 29–34 (the cardboard box spattered with
Hartsfield's DNA and pictures of that box) into evidence over a timely and specific objection
that the State could not prove a proper chain of custody of the exhibits? 
            1.         Tanner's Prosecutorial Authority
            The first issue before this Court is whether the election of a different County Attorney
invalidated Tanner's authority to prosecute this matter. Hartsfield never complained about Tanner's
authority until such a complaint was made in the appellant's brief before this Court. In order to
preserve error, an objection should be made as soon as the grounds for the objection become
apparent. Angelo v. State, 977 S.W.2d 169, 177 (Tex. App.—Austin 1998, pet. ref'd) (citing Dinkins
v. State, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995)); see also Tex. R. App. P. 33.1. The issue of
Tanner's involvement should have become apparent soon after the induction of Jimerson, or at least
on the first day of trial when Tanner delivered her opening statements. Since there was no objection
to Tanner's authority before this appeal, Hartsfield forfeited any claim of error. See Stephens v. State,
978 S.W.2d 728, 730 (Tex. App.—Austin 1998, pet. ref'd) (error was waived because, at no time
during trial, did appellant object to authority of attorney pro tem). 
            Even if the issue was preserved, we do not believe error is present. There is no question that
Freeman deputized Tanner to prosecute this case. Freeman's deputation authorized Tanner "to do
and perform any and all acts and things pertaining to the office of said County Attorney" in regard
to the Hartsfield case. When Freeman left office, Tanner began serving at the will and pleasure of
Jimerson. Jimerson could have dismissed her at any point, but instead told her to keep doing what
she was doing. 
            Instead of being a deputy, as in the Freeman tenure, Tanner could have remained on the case
under Jimerson's direction in the capacity of a special prosecutor. See generally Tex. Code Crim.
Proc. Ann. art. 2.01 (Vernon 2005). On request, a special prosecutor assists a county attorney in
the investigation and prosecution of a particular case. Stephens, 978 S.W.2d at 731; Rogers v. State,
956 S.W.2d 624, 625 n.1 (Tex. App.—Texarkana 1997, pet. ref'd). A special prosecutor differs from
a deputy because a special prosecutor is not required to take a constitutional oath of office, unless
the elected district attorney is absent or disqualified. Lopez v. State, 628 S.W.2d 77, 80 (Tex. Crim.
App. [Panel Op.] 1982); Stephens, 978 S.W.2d at 731; Rogers, 956 S.W.2d at 625 n.1; Davis v.
State, 840 S.W.2d 480, 487 (Tex. App.—Tyler 1992, pet. ref'd).
            Further, with a special prosecutor, the county attorney must retain control and responsibility
for the prosecution. Stephens, 978 S.W.2d at 731; Rogers, 956 S.W.2d at 625 n.1; State v.
Rosenbaum, 852 S.W.2d 525, 529 (Tex. Crim. App. 1993). "Control of the prosecution" means
control of crucial prosecutorial decisions, including, but not limited to, decisions regarding whether
to prosecute, what investigative powers to utilize, and what plea bargains to strike. Faulder v.
Johnson, 81 F.3d 515, 517 (5th Cir. 1996). Control of the prosecution is not determined according
to quantitative analysis or by simply looking at who was lead counsel at trial; in fact, for tactical
reasons, a county attorney can give substantial portions of the conduct at trial to a particularly skilled
assistant without relinquishing control. Id. at 517–18 (citing Person v. Miller, 854 F.2d 656, 663
(4th Cir. 1988)). The rationale for requiring the district or county attorney to retain control of the
prosecution is to assure that the interests of society in providing justice and a fair trial are not
secondary to the interests of private parties who, in some cases, pay fees to special prosecutors. See
Faulder, 81 F.3d at 517. That concern is not present in this case, as Tanner is employed by the
Attorney General of Texas and not only had the same statutory duty to see that justice is done as does
the County Attorney, but also, as a state employee, had no allegiance to a private party based on
financial remuneration. 
            The record does not demonstrate that Jimerson relinquished his constitutional or statutory
duties or that he yielded control of this case. Since no objection was presented to Tanner's
prosecution, there was no hearing to develop a record as to Jimerson's control of the case. However,
we note that Jimerson is listed on every volume of the court reporter's record as one of the attorneys
appearing on behalf of the State. It is undisputed that Jimerson was present during the trial. Tanner
referred to Jimerson several times during the trial, stating they were "working alongside" each other.
            We overrule the first point of error. 
            2.         Admission of Exhibits 29–34
            The second issue on appeal is whether State's Exhibits 29–34 were improperly admitted over
a timely objection that the State was unable to prove a proper chain of custody. The exhibits are a
box spattered with blood and photographs of that box. The blood on the box is the only physical
evidence of Hartsfield being present in KFC, and thus guilty of perjury. An abuse of discretion
standard is used when reviewing a trial court's decision to admit evidence. City of Brownsville v.
Alvarado, 897 S.W.2d 750, 753 (Tex. 1995); Smith v. State, 683 S.W.2d 393, 404 (Tex. Crim. App.
1984). A trial court does not abuse its discretion in admitting evidence when it believes that a
reasonable juror could find that the evidence has been authenticated or identified. Pena v. State, 864
S.W.2d 147, 152 (Tex. App.—Waco 1993, no pet.); Coleman v. State, 833 S.W.2d 286, 289 (Tex.
App.—Houston [14th Dist.] 1992, pet. ref'd). 
            Texas Rule of Evidence 901 requires the authentication or identification of evidence to
establish that the matter in question is what the proponent claims it to be. Tex. R. Evid. 901. In
providing the proof necessary to comply with Rule 901, the proponent of the item of evidence must
present differing types of evidence depending on the nature of the item. Articles that are easily
identifiable and are substantially unchanged normally do not require the introduction of a chain of
custody. See, e.g., Outland v. State, 810 S.W.2d 474, 475 (Tex. App.—Fort Worth 1991, pet. ref'd)
(pistol seized from defendant's automobile and identified by officers together with no evidence of
tampering was sufficient even though pistol not tagged when seized). If the item has distinct or
unique characteristics, a witness may authenticate it by testifying that he or she has previously seen
the item at the relevant time and place and that the witness recognizes it by its distinctive
characteristics. See Mendoza v. State, 69 S.W.3d 628, 631 (Tex. App.—Corpus Christi 2002, pet.
ref'd). However, if the article of evidence has no distinctive features or is fungible, the item must
be proven by showing a chain of custody, typically from the scene of the crime to the courtroom. 
Authentication of such an article may be accomplished by marking the item and identifying it at trial
as the same, so long as there is no evidence of tampering or alteration. See Garcia v. State, 537
S.W.2d 930, 934 (Tex. Crim. App. 1976). The chain of custody is conclusively proven if the officer
is able to identify that he or she seized the item of physical evidence, put an identification mark on
it, placed it in the property room, and then retrieved the item being offered on the day of trial. Stoker
v. State, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989) (citing Elliott v. State, 450 S.W.2d 863, 864 (Tex.
Crim. App. 1970)). Generally, when the evidence sought to be admitted may be distinguished only
via scientific testing, then a chain of custody must be demonstrated. Porter v. State, 969 S.W.2d 60,
66 (Tex. App.—Austin 1998, pet. ref'd) (urine specimen); Davis v. State, 831 S.W.2d 426, 442–43
(Tex. App.—Austin 1992, pet. ref'd) (blood specimen). Any gaps in the chain of custody go to the
weight of the evidence, not admissibility; however, proof should be shown as to the beginning and
end of the chain. Porter, 969 S.W.2d at 66; Davis, 831 S.W.2d at 443. 
            The State maintains that the box has distinct or unique characteristics and, therefore, a chain
of custody is unnecessary to prove authentication. Hartsfield emphasizes the evidence consists of
a blood specimen, not just the box, and therefore the custody chain is required. But the evidence
sought to be admitted here is not a vial of blood that could only be identified if it had been properly
marked for identification when it was acquired and thereafter traced. Here, the item was a box that
had an unusual characteristic—a marking that appeared to be blood spatter. Until that box was
analyzed, it could not be determined that the marking on the box was in fact blood. This Court has
considered an analogous situation in Jackson v. State, 968 S.W.2d 495 (Tex. App.—Texarkana 1998,
no pet.). In Jackson, the defendant was charged with sexual assault. A search of his residence
uncovered certain items, including blood-stained jeans. The jeans were identified by the defendant's
wife, who had personal knowledge that Jackson was wearing them on the night of the assault. An
expert testified that the blood on the jeans came from the victim. Even though the defendant
objected to a proper chain of custody concerning the jeans and the blood, his wife's identification of
the jeans was sufficient to show the jeans were what the State claimed. Id. at 500. Likewise, here
identification of a box with distinct characteristics by a witness who saw it at the scene of the crime
is sufficient authentication. We turn to the evidence presented on this issue. 
            There are no photographs of the box at the restaurant, and at trial, the State conceded that it
could not prove who removed the box from the restaurant. Officers used ten rolls of film to
photograph the KFC, but only one of the rolls developed properly. None of the photographs showed
the box at the KFC scene. The manager of KFC, Leann Killingsworth, testified that the box was the
same kind of box that was used at the restaurant. Killingsworth also testified that the box was kept
in the empty space underneath and to the right of the cash register. However, Elliott, who assisted
in the investigation of the crime scene, testified that State's Exhibit 29 was the box from KFC. First,
Elliott recognized State's Exhibit 29 as the type of box he saw at KFC in the place where
Killingsworth testified it was kept. Then Elliott testified that the blood spatter on State's Exhibit 29
was in the same pattern as he remembered being on the box at KFC. Last, he testified there was no
question in his mind State's Exhibit 29 was the same box that he saw at KFC on the night of
September 24, 1983. 
            In Jackson, the wife's personal knowledge that Jackson was wearing the jeans on the night
of the assault sufficiently authenticated the pants to allow the admission of the results of DNA tests
done on blood on the jeans. She had seen those jeans on Jackson that night. Id. at 500. Elliott saw
this box at KFC that morning. Elliott's testimony is sufficient to prove the item is what it is claimed
to be—the box, spattered with distinctive markings, found inside the KFC September 24, 1983. The
trial court did not err in admitting the evidence. 
            We affirm the judgment of the trial court.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          June 5, 2006
Date Decided:             August 23, 2006

Publish