

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00126-CR

ALEC SEBASTIAN CALEB DICKINSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-21-28014

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

A Fannin County jury found Alec Sebastian Caleb Dickinson guilty of possessing one or more but less than four grams of methamphetamine. In accordance with the jury's assessment, the trial court sentenced Dickinson to eight years' imprisonment and imposed a $6,000.00 fine. On appeal, Dickinson argues (1) that the trial court erred by admitting the drugs over his objections related to the chain of custody, (2) that the evidence is legally insufficient to support the jury's verdict, and (3) that the trial court erred by admitting the testimony of an undisclosed witness at punishment.

We find no abuse of discretion in the trial court's decision to admit the drugs and conclude that legally sufficient evidence supported the jury's verdict of guilt. We also find that the trial court did not abuse its discretion by allowing the undisclosed witness to testify at punishment since the same witness was properly noticed in a case against Dickinson that was set for trial on the same day. As a result, we affirm the trial court's judgment.

## I.    Factual Background

David Pruiett, an officer with the Honey Grove Police Department, testified that he was dispatched to the scene of a disturbance, where he found Dickinson, who had an outstanding warrant. After arresting Dickinson on the warrant, Pruiett searched him and found a green bottle containing a "clear crystalline substance" that appeared to be methamphetamine, along with several cellophane wrappers. Pruiett's body-camera footage was admitted without objection and was played for the jury. The recording, albeit dark, showed that, during the search when Pruiett found the green bottle, Dickinson said, "It is what you think it is." The recording showed Pruiett

2

examining the green bottle and the crystalline substance, which was later mailed to the Texas Department of Public Safety Crime Laboratory in Tyler, Texas (DPS crime lab).

Karen Collins, a forensic scientist with the DPS crime lab, testified that she received the crystalline substance from the Honey Grove Police Department and conducted a preliminary test indicating that the substance was methamphetamine. Collins described the further scientific tests she conducted on the substance and confirmed that it contained 2.07 grams of methamphetamine. Collins's laboratory report was admitted without objection.

After hearing this evidence, the jury found Dickinson guilty of possessing more than one but less than four grams of methamphetamine.

## II.     The Trial Court Did Not Abuse Its Discretion by Admitting the Drugs into Evidence

In his first point of error, Dickinson argues that the State failed to establish the chain of custody of the seized drugs and that, as a result, the trial court erred by admitting the methamphetamine into evidence. We disagree.

### A.     Standard of Review

"A trial judge has great discretion in the admission of evidence at trial . . . ." *Druery v. State*, 225 S.W.3d 491, 503 (Tex. Crim. App. 2007). "We review a trial court's decision to admit evidence for [an] abuse of discretion." *Colone v. State*, 573 S.W.3d 249, 263–64 (Tex. Crim. App. 2019); *see Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). "The trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably." *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019).

3

The Texas Court of Criminal Appeals has explained that, "although the evidentiary rules do not specifically address proper chain of custody, they do state that identification for admissibility purposes is satisfied if the evidence is sufficient to support a finding that the matter in question is what its proponent claims." *Druery*, 225 S.W.3d at 503 (citing TEX. R. EVID. 901(a); *Kingsbury v. State*, 14 S.W.3d 405, 407–08 (Tex. App.—Waco 2000, no pet.)).

"In providing the proof necessary to comply with Rule 901, the proponent of the item of evidence must present differing types of evidence depending on the nature of the item." *Hartsfield v. State*, 200 S.W.3d 813, 817 (Tex. App.—Texarkana 2006, pet. ref'd). "[I]f the article of evidence has no distinctive features or is fungible, the item must be proven by showing a chain of custody, typically from the scene of the crime to the courtroom." *Id.* at 818. Also, "when the evidence sought to be admitted may be distinguished only via scientific testing, then a chain of custody must be demonstrated." *Id.* "Authentication of such an article may be accomplished by marking the item and identifying it at trial as the same, so long as there is no evidence of tampering or alteration." *Id.* "The chain of custody is conclusively proven if the officer is able to identify that he or she seized the item of physical evidence, put an identification mark on it, placed it in the property room, and then retrieved the item being offered on the day of trial." *Id.* (citing *Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), *overruled on other grounds by Horton v. California*, 496 U.S. 128 (1990)).

"Absent evidence of tampering or other fraud, . . . problems in the chain of custody do not affect the admissibility of the evidence. Instead, such problems affect the weight that the

4

fact-finder should give the evidence, which may be brought out and argued by the parties."
*Druery*, 225 S.W.3d at 503–04 (footnote omitted) (citations omitted).

### B.      Chain-of-Custody Evidence

Pruiett testified that the green bottle never left his custody after he found the methamphetamine on Dickinson's person during the arrest. Pruiett "weighed, inventoried, and field tested the substance" at the Honey Grove Police Department. He then "immediately took all parts of the narcotics . . . and sealed them in the evidence container," a clear plastic bag, which Pruiett labeled with his name, Dickinson's name, the offense report number (21-0315200), and the date. Next, Pruiett placed the evidence container in a secure evidence locker, which Pruiett said was "secured by the chief of police as [he was] the custodian of evidence."

Lee Dixon, the chief of police for the Honey Grove Police Department, testified that he completed a lab submission form, retrieved the evidence container from the evidence locker, placed it in an envelope containing his initials and the offense report number, and took the envelope to the post office, where he mailed it to the DPS crime lab by certified mail, return receipt requested.

Dixon testified that he "actually drove to the crime lab [on the day before trial] and . . . retrieved [the envelope] back from them" and "placed it in a property locker until [the day of trial], and then [he] removed it to bring it with [him to trial]." The sealed envelope containing Dixon's initials and the offense report number was admitted without objection. Dixon opened the envelope in front of the jury and pulled out the evidence container holding the

methamphetamine that "was packaged by Officer Pruiett," which the State sought to introduce as Exhibit 5.

At that point, Dickinson's attorney conducted the following voir dire examination of Dixon:

> Q. You indicated this is how you found this, correct?
>
> A. Yes.
>
> Q. Okay. Did anyone else have access to this . . . in the locker?
>
> A. No.
>
> Q. You were the only one with access to the locker?
>
> A. No. The officers have access to the locker to place that in --
>
> Q. Okay.
>
> A. -- yes.
>
> Q. Do you . . . know definitively if anyone else took it out or touched it or anything else while it was in the locker?
>
> A. Definitively, no.

Dickinson's counsel objected to the chain of custody, but the trial court overruled the objection and said, "It will go to weight and not admissibility."

**C.     Analysis**

On appeal, Dickinson argues that there was no "clear 'handing off' of the evidence from Officer Pruitt [sic] to Chief Dixon." As a result, he believes that the trial court erred by admitting the physical drugs into evidence. We disagree.

Pruiett testified that the drugs were the same ones that he seized from Dickinson's person. He described the steps he took, including marking the evidence container with Dickinson's name and a unique offense report number, to ensure that the drugs would not be confused with any other item in the secure evidence locker. Dixon testified that he retrieved the evidence container holding the methamphetamine from the secure evidence locker, placed it in an envelope containing unique identification markings, and mailed it to the DPS crime lab.

After the analysis of the substance, Dixon drove to the DPS crime lab to retrieve the envelope containing the evidence container, secured it in a property locker, and retrieved it on the day of trial. The sealed envelope housing the evidence container was admitted without objection. Dixon opened the envelope in front of the jury and pulled out the evidence container holding the methamphetamine.

Because there was no evidence of tampering or other fraud, we find that the trial court was correct in stating that any problem in the chain of custody only affected the weight, and not the admissibility, of the evidence. As a result, we conclude that the trial court did not abuse its discretion by admitting into evidence the evidence container holding the methamphetamine.[1]

We overrule Dickinson's first point of error.

---

[1]Moreover, Collins testified that the labels on the outside of the envelope received by the DPS crime lab had a unique offense report number and that the submission form with the case information was "entered into [their] LIMS system, which generate[d] [a] unique case number and [a] bar code" "only for [that] piece of evidence," which allowed the DPS crime lab to "monitor where [the evidence was] at in the lab, if [it was] in the vault or if [it was] in [her] custody." Collins said the markings on the envelope showed "where [she] opened the evidence and then [she] sealed in the same spot, and the clear tape with the yellow tape with [her] initials" showed "the date [she] sealed it."

**III.    Legally Sufficient Evidence Supported the Jury's Verdict of Guilt**

In his second point, Dickinson asserts that the evidence was not legally sufficient, but his actual argument related to legal sufficiency merely states that, because the trial court erred by admitting the physical evidence, "the jury was allowed to rely on evidence with a broken chain of custody." We reject Dickinson's actual argument and find the evidence sufficient to support the jury's verdict.

**A.    Standard of Review**

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

"[A]n appellate court must consider *all* evidence actually admitted at trial in its sufficiency review and give it whatever weight and probative value it could rationally convey to a jury. Thus, even if the trial court erred in admitting [evidence,] . . . the reviewing court must

8

consider that improperly-admitted [evidence] . . . in assessing the sufficiency of the evidence . . . ." *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004) (footnote omitted) (citation omitted).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). Here, the State alleged that Dickinson intentionally or knowingly possessed more than one but less than four grams of methamphetamine.

## B. Analysis

Pruiett testified that his search of Dickinson, incident to an arrest, yielded his discovery of a crystalline substance that appeared to be methamphetamine. Pruiett field tested the substance, which indicated it was methamphetamine. The jury watched Pruiett's body-camera footage showing his encounter with Dickinson, his discovery of the green bottle containing the crystalline substance, and Dickinson's statement, "It is what you think it is." The substance was mailed to the DPS crime lab. Without objection, Collins testified that she analyzed the substance and concluded it was 2.07 grams of methamphetamine. We find that this testimony was legally sufficient to enable any rational jury to conclude, beyond a reasonable doubt, that the State met

9

its burden to prove that Dickinson committed each element of the offense alleged by its indictment.  As a result, we overrule Dickinson's second point of error.

## IV.     The Trial Court Did Not Abuse Its Discretion in Allowing Punishment Testimony

In his last point of error, Dickinson argues that the trial court erred by admitting Lauren Perry's testimony during punishment because her name was not disclosed by the State as a potential witness.  Because Perry was disclosed as an expert witness in a case against Dickinson that was set for trial on the same day, we find no abuse of discretion in the trial court's ruling.

### A.     Procedural Background

Perry was a DPS crime lab analyst.  The State filed a notice of intent to introduce extraneous offenses on February 7, 2023, indicating its intent to introduce evidence of "the charge of Delivery on [sic] a Controlled Substance, Penalty Group [sic] with the weight being reduced to Less Than One Gram in a Drug Free Zone on July 22, 2021[,] and assigned the cause number CR-21-28134."  At the beginning of the punishment phase, the State informed the trial court that Perry had been timely disclosed as an expert witness "on Case Number 21-28134," but was not listed as an expert in this case.  Even so, the State argued that Dickinson would not be surprised by Perry's testimony in light of the February 7 notice and because "the lab report in which she was the analyst with her name and information was provided in discovery."  Dickinson did not respond to the State's argument on lack of surprise, but simply asked that Perry be excluded because she was not listed as an expert in this case.  After noting that this case and cause number CR-21-28134 were both set for trial on the same day, the trial court implicitly

10

found that Dickinson could have reasonably anticipated that Perry would testify and overruled his objection.

During punishment, Perry testified that her analysis of the substance that she received in cause number CR-21-28134 showed that it was .62 grams of methamphetamine.

## B.    Standard of Review

Upon the defendant's proper request, the State is required to disclose the expert witnesses it intends to call at trial, and unless otherwise ordered by the court, the State must make that disclosure "not later than the 20th day before the date that jury selection in the trial is scheduled to begin." TEX. CODE CRIM. PROC. ANN. art. 39.14(b) (Supp.); *see Hightower v. State*, 629 S.W.2d 920, 925 (Tex. Crim. App. [Panel Op.] 1981); *Osbourn v. State*, 59 S.W.3d 809, 813 (Tex. App.—Austin 2001), *aff'd by* 92 S.W.3d 531 (Tex. Crim. App. 2002). Although Dickinson made the request, the State did not timely disclose Perry as a witness in this case.

If the trial court allows a previously undisclosed State's witness to testify, appellate courts review that decision for an abuse of discretion. *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993); *Hardin v. State*, 20 S.W.3d 84, 88 (Tex. App.—Texarkana 2000, pet. ref'd). In determining whether the trial court abused its discretion, we consider (1) whether the State's action constituted bad faith and (2) whether the defendant could have reasonably anticipated that the undisclosed witness would testify. *See Nobles v. State*, 843 S.W.2d 503, 514–15 (Tex. Crim. App. 1992); *Hardin*, 20 S.W.3d at 88.

**C.     Analysis**

This case and cause number CR-21-28134 were set for trial on the same day.  The State provided proper notice of its intent to call Perry as an expert witness in cause number CR-21-28134 but failed to do so in this case.  Even so, nothing suggested that the State's omission constituted bad faith or was made with intent to deceive,[2] and Dickinson made no response to the State's argument at trial that he could have reasonably anticipated that Perry would testify based on (1) the notice of intent to introduce cause number CR-21-28134 as an extraneous offense, (2) the notice that the State intended to call Perry as an expert witness in cause number CR-21-28134, and (3) the lab report disclosed during discovery in this case containing Perry's information.  Because Dickinson knew, well before trial, that, in the other case against him, Perry was the lab analyst that the State was going to introduce during punishment, and because Dickinson had Perry's lab report, the trial court was within its discretion to find that Dickinson could have reasonably anticipated the substance of Perry's testimony.  As a result, we cannot say that the trial court acted arbitrarily, unreasonably, or without reference to any guiding rules by overruling Dickinson's objection to Perry's testimony at punishment.

We overrule Dickinson's last point of error.

---

[2]On the day before trial, the State noticed Perry's name in this case.

12

## V.    Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:    October 26, 2023
Date Decided:      November 2, 2023

Do Not Publish